UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MICHAEL JARRETT,

          Plaintiff,          Case No. 1:13-cv-139

v.                                         Honorable Gordon J. Quist

BROOKE SNYDER et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Breedlove. The Court will serve the complaint against Defendant Snyder.

## Discussion

I. Factual allegations

Plaintiff Michael Jarrett presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility, though the actions he complains of occurred while he was housed at the Ionia Maximum Correctional Facility (ICF). He sues ICF Assistant Resident Unit Supervisor Brooke Snyder and ICF Grievance Coordinator M. Breedlove.

Plaintiff is a Buddhist who was approved for placement on a strict vegetarian diet while he was housed at the Richard A. Handlon Correctional Facility, probably in early 2011. On June 18, 2012, while he was housed at ICF, he was issued a Notice of Intent to Conduct an Administrative Hearing (NOI) as to whether he should be removed from his religious diet. The NOI was issued based on a single email sent to Food Service Director G. Lewis, alleging that on March 16, 2012, Plaintiff and three other individuals were suspected of violating the restrictions of the diet policy by eating food from the main line. In preparation for the hearing, Plaintiff submitted a statement of his defense, including five questions to be asked and answered before the decision was made. Plaintiff did not receive a hearing and heard no more until August 3, 2012, when he was denied his religious meal by Food Service Supervisor J. Dykstra. When questioned, Dykstra informed Plaintiff that he was no longer authorized to receive a strict vegetarian diet. Plaintiff was shown a copy of a hearing report prepared by Defendant Snyder, stating that Snyder had conducted a hearing on August 2, 2012 and had removed Plaintiff from the diet.

Plaintiff spoke to Snyder, asking why she had fabricated the hearing report. Snyder told Plaintiff that she and Plaintiff had met in her office the day before to hold the hearing. Plaintiff denied the statement and sought assistance from supervisory staff, who took no action. He filed a grievance on August 3, 2012, alleging that he had been removed from his diet without a hearing.

His grievance was given the number ICF 12/08/2995 28I, and it was rejected by Defendant Breedlove on the ground that he had failed to attempt to resolve the issue with staff prior to filing.

That same day, Plaintiff filed a second grievance, #ICF 12/08/2996 28A, in which he alleged that Defendant Snyder had compiled and circulated a false report of a hearing that she had not conducted. The grievance was denied at Step I because it raised duplicate issues.

On August 4, 2012, Plaintiff wrote a third grievance, #ICF 12/08/2994 07B, alleging that Defendant Snyder was discriminating against him. The grievance was rejected by Defendant Breedlove on August 22, 2012. After receiving the rejection, Plaintiff asked Breedlove for a grievance appeal form, which Breedlove denied on two occasions.

On August 28, 2012, Plaintiff was interviewed by Deputy Warden Norwood on one of the grievances. Plaintiff was not informed which grievance was in issue, but he assumed it was the last grievance, because it was the only one that had been given a title that did not indicate that it had been rejected.

Plaintiff then requested appeal forms for all three grievances. On September 11, 2012, Defendant Breedlove gave him appeal forms for three grievance numbers: ICF 12/08/2994 07 B, ICF 12/08/2995 9F, and ICF 12/08/2996 28A. Although he had not yet received responses on his grievances, Plaintiff appealed #ICF 12/08/2994 07B and #ICF 12/08/2996 28A. He received Step II responses on these grievances on October 16 and October 17, 2012.

On September 20, 2012, Plaintiff asked Breedlove about the disparity in the number on the remaining form, which referenced #ICF 12/08/2995 9F, rather than #ICF 12/08/2995 28A. Breedlove indicated that the number had been changed and that Plaintiff was to file the appeal of his first grievance under #ICF 12/08/2995 9F. Plaintiff appealed as instructed.

On September 20, 2012, Plaintiff received a grievance response from Deputy Warden Norwood, which alerted him to the fact that the numbers he had used on one of his grievances were incorrect. Plaintiff filed a grievance with the ICF inspector, #ICF 12/10/3420 28J, complaining that Breedlove's conduct demonstrated a willful attempt to disrupt the grievance process. The inspector rejected the grievance on October 18, 2012, because Plaintiff's proper remedy under the rules was to file an appeal of the grievance denial, not to file another grievance.

Plaintiff appealed his grievances to Step III. He has not received Step III responses in a timely fashion.

Plaintiff claims that Defendant Snyder's action in removing Plaintiff from his religious diet without a hearing violated his rights under the Due Process Clause and the First Amendment. He claims that Defendant Breedlove intentionally disrupted the grievance process and deprived him of his right to file a grievance under the MDOC grievance policy.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Breedlove

Plaintiff alleges that Defendant Breedlove interfered with the grievance process, thereby preventing him his right to file a grievance. Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable

liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process. Plaintiff therefore fails to state a federal constitutional claim against Defendant Breedlove.

Further, to the extent that Plaintiff's intends to raise a claim against Breedlove under state law, this Court declines to exercise jurisdiction over the state-law claim. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

### B. Defendant Snyder

Upon review, the Court concludes that Plaintiff's allegations are sufficient to warrant service of the complaint on Defendant Snyder.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the federal claims against Defendant Breedlove will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state-law claims against Defendant Breedlove will be dismissed without prejudice. The Court will serve the complaint against Defendant Snyder.

An Order consistent with this Opinion will be entered.


Dated: March 8, 2013 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE