UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JARRETT,

        Plaintiff,                     Case No.  1:13-CV-139

v.                                         Hon. Gordon J. Quist

BROOKE SNYDER, et al.,

        Defendants.
_____/

## ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION

On August 20, 2014, Magistrate Judge Hugh W. Brenneman, Jr. issued a Report and Recommendation (R & R), in which he recommended granting Defendants' motion for summary judgment in part, denying that motion in part, and denying Plaintiff's motion for summary judgment. Plaintiff objected to the R & R.  Having conducted a *de novo* review of the R & R, Plaintiff's objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted in part and rejected in part.

*Background*

Plaintiff, Michael Jarrett, is incarcerated with the Michigan Department of Corrections (MDOC).  Plaintiff, a Buddhist, was previously approved for placement on a strict vegetarian diet. On June 18, 2012, Plaintiff was issued a Notice of Intent to Conduct an Administrative Hearing (NOI) as to whether he should be removed from his religious diet.  On August 3, 2012, Plaintiff was informed that he was no longer authorized to receive the religious diet.  He was provided with a report prepared by Defendant Brooke Snyder stating that Snyder had conducted a hearing on August

2, 2012 and had removed Plaintiff from the diet.. Plaintiff alleges that the hearing never occurred, and that the report was fabricated.

Over the following two days, Plaintiff filed three separate grievances related to his allegation. Plaintiff appealed the grievances through Step III. On February 8, 2013, Plaintiff filed a complaint in the instant action against Snyder. At that time, he had not received a Step III response. On November 14, 2013, Plaintiff amended his complaint to add Defendants Jane Dykstra, Harold Gilkey, Nonnette Norwood, and Case Cheney.

### *Defendants' Motion for Summary Judgment*

Defendants contend that Plaintiff did not exhaust his administrative remedies as to any Defendant because he filed his complaint before he received a response to his Step III grievance. Defendants further contend that Plaintiff did not exhaust as to Gilkey, Dykstra, Norwood, or Cheney for the additional reason that he did not name those individuals in his grievances. The magistrate judge concluded that Plaintiff did not exhaust his claims against Gilkey, Norwood, or Cheney, but that there was an issue of fact regarding exhaustion as to the remaining defendants. Plaintiff objects to those conclusions.[1]

Prior to bringing an action with respect to prison conditions under 42 U.S.C. § 1983, a prisoner must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002). The failure of a prisoner to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden of establishing. *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007). To properly exhaust, a prisoner must complete the administrative review process in accordance with the prison's deadlines and other procedural rules.

---

[1]Plaintiff concedes that he did not exhaust his claims against Cheney.

2

*Id.* at 217-18, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 outlines a a three-step grievance process that inmates must complete. An inmate who is not able to resolve a problem orally must submit a Step I grievance form. MDOC Policy Directive 03.02.130 ¶ P. The prisoner must include the names of all individuals involved in the issue being grieved in the Step I grievance. *Id.* at ¶ R. The MDOC must generally provide a response to the grievance within 15 days of its receipt, although that deadline may be extended by up to 15 days. *Id.* at ¶¶ S, X.

If an inmate is dissatisfied with the Step I response, or does not receive a timely response, he may file a Step II appeal within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ BB. If the inmate is dissatisfied with the Step II response, he may appeal to Step III. *Id.* at ¶ FF. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Plaintiff objects to the magistrate judge's conclusion that he did not exhaust his claims against Gilkey, arguing that he named Gilkey in his grievance. Plaintiff's grievances were not directed at Gilkey, however, but simply stated that Plaintiff attempted to resolve the issue by speaking to Gilkey. As such, the grievances did not give Gilkey fair notice that they were directed at him. *See Vandiver v. Corr. Med. Servs., Inc.*, 326 Fed App'x 885, 890 (6th Cir. 2009) (affirming the district court's finding that claims were not exhausted where they did not give the defendants fair notice that the grievance was directed against them.) Accordingly, the Court finds that Plaintiff did not exhaust his claims against Gilkey.

Plaintiff acknowledges that he did not name Norwood in his Step I grievance, but argues that such omission should be excused because Norwood did not become involved until after Plaintiff filed his Step I grievance. MDOC policy requires a prisoner to name all individuals involved in the issue being grieved in the Step I grievance. If Plaintiff became aware of a grievable issue regarding Norwood, he could have filed a Step I grievance against her. *See* MDOC Policy Directive 03.02.130 ¶ P. He could not add her at Step II of the grievance process. Accordingly, Plaintiff did not exhaust his claims against Norwood.

Finally, Plaintiff objects to the magistrate judge's conclusion that there was an issue of fact with respect to whether Plaintiff exhausted his claims against Snyder and Dykstra before filing his complaint in this action. The MDOC policy states that the entire grievance process *shall* generally be completed in 120 days unless extensions have been granted in writing. Each of Plaintiff's grievances had been pending for more than 120 days when he filed the complaint. In fact, the first of the grievances he filed had been pending for 189 days. During the time that his Step III grievances were pending, prison officials never informed Plaintiff why his appeal was taking so long or when he could expect to receive a response.

The Sixth Circuit has made clear that an inmate properly exhausts his administrative remedies when prison officials' failure to timely respond to a properly filed grievance renders an administrative remedy unavailable. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004); *Ward v. Luckey*, No. 12-CV-14875, 2013 WL 5595350, at *7-8 (E.D. Mich. Oct. 11, 2013). Thus, Defendants' argument that Plaintiff should have simply waited for a response before filing his complaint—no matter how long that response took—is unavailing. Defendants have failed to demonstrate that Plaintiff did not exhaust his administrative remedies against Snyder and Dykstra. There is no issue of fact regarding exhaustion, and Plaintiff's claims against those defendants may

proceed on the merits.

### *Plaintiff's Motion for Summary Judgment*

MDOC policy allows for a prison to rescind a prisoner's approval for religious meals only after conducting a hearing that complies with specified procedures. MDOC Policy Directive 05.03.150 ¶ VV. Plaintiff argues that he was not provided with a hearing before he was removed from the religious meal plan, and that no reasonable juror could find otherwise. Thus, he objects to the magistrate judge's conclusion that there is a material issue of fact that precludes summary judgment on his claims.

Plaintiff provided an affidavit with his motion for summary judgment stating that he was not provided with a hearing, and that the hearing report stating otherwise was thus fraudulent. In response, Defendants provided nothing more than the hearing report that Plaintiff claims is fraudulent. However, in conjunction with a previous motion for summary judgment, Snyder provided an affidavit stating that she conducted an administrative hearing on August 2, 2012, and that Plaintiff was present at the hearing.[2] (Dkt. #23-6 at Page ID #156.) Thus, there is a dispute of fact as to whether the hearing occurred and whether Plaintiff was present. This issue is central to Plaintiff's claims, and thus the dispute precludes summary judgement.

Therefore,

**IT IS HEREBY ORDERED** that the Report and Recommendation of the Magistrate Judge filed August 20, 2014 (dkt. # 88), is **ADOPTED in part** and **REJECTED in part**.

---

[2] "[W]hile the litigant must cite 'particular parts of materials in the record,' Fed. R. Civ. P. 56(c)(1)(A), courts are not precluded from exercising the discretion granted to them in Rule 56(c)(3) to review other materials in the record." *LidoChem, Inc. v. Stroller Ent., Inc.*, 500 Fed. App'x 373, 383 (6th Cir. 2012). It is not clear to the Court why Defendants failed to support their opposition to Plaintiff's summary judgment motion by citing to any evidence that would create a dispute of fact. Nonetheless, the Court will exercise its discretion to consider Snyder's affidavit filed in conjunction with her previous motion for summary judgment.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (dkt. # 53) is **GRANTED in part** and **DENIED in part**.  The claims against Defendants Cheney, Gilkey and Norwood are **DISMISSED**.  The claims against Defendants Snyder and Dykstra may proceed on the merits.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (dkt. # 40) is **DENIED**.

Dated:  September 10, 2014                                  /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE