UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JARRETT,

        Plaintiff,

Case No. 1:13-cv-139

Hon. Gordon J. Quist

vs.

BROOKE SNYDER, *et al.*,

        Defendants.

                                            /

**REPORT AND RECOMMENDATION**

Plaintiff has filed a § 1983 civil rights action against a number of defendants. At this point, only two defendants remain in this action, Assistant Resident Unit Supervisor (ARUS) Brooke Snyder and Food Service Supervisor (FSS) Jane Dykstra. This matter is now before the court on plaintiff's second "Motion for temporary restraining order and preliminary injunction" (docket no. 78).[1]

        **I.**        **Plaintiff's complaint**

Plaintiff alleged that he is a practicing Buddhist. Compl. at ¶ 1. On December 10, 2010, while housed at the Michigan Training Unit (MTU), plaintiff was interviewed pursuant to

---

[1] The Court notes that plaintiff attempted to invoke W.D. Mich. LCivR 7.1(e) by inserting the phrase "Expedited Consideration Requested" on the face of his motion. Under this rule, expedited consideration is reserved for those rare circumstances in which "the relief requested by a motion may be rendered moot before the motion is briefed in accordance with the [briefing] schedules set forth herein" and that the party requesting expedited consideration "shall identify in the motion the reason expedited consideration is necessary." W.D. Mich. LCivR 7.1(e). Plaintiff's motion does not identify why this matter requires expedited consideration under the rule. In a supporting declaration, plaintiff stated that he requested expedited consideration because he was placed on a dietary restriction for one year, that he applied for reinstatement on the diet, and that the Michigan Department of Corrections has not responded to his application. *See* Plaintiff's Decl. at ¶ 18 (docket no. 80). While these statements express plaintiff's desire to obtain an expedited resolution of his dispute with the prison officials, the statements do not meet the requirements for expedited consideration under W.D. Mich. LCivR 7.1(e).

Michigan Department of Corrections (MDOC) policy for placement on a diet which conformed to his Religious Beliefs and Practices. *Id.* Plaintiff was later approved for placement on the strict vegetarian diet. *Id.* On June 18, 2012, while housed at the Ionia Correction Facility (ICF), an NOI (Notice of Intent) was written against plaintiff seeking to remove him from the religious diet, because he was suspected of violating the restrictions of the diet by eating food served on the main line. *Id.* at ¶ 3. Plaintiff was interviewed regarding the accusations on June 19, 2012. *Id.* at ¶ 4. In preparation for the hearing, plaintiff submitted a statement of defenses to defendant ARUS Snyder. *Id.* at ¶ 5. Plaintiff alleged that no hearing was held, but that on August 3, 2012, he was advised by defendant FSS Dykstra that he was taken off of the strict vegetarian diet. At this time, plaintiff was shown a copy of a hearing report by Snyder dated August 2, 2012, stating that Snyder had conducted a hearing and removed him from the diet. *Id.* at ¶ 6. Plaintiff alleged that Snyder's actions violated his 1st Amendment right to freely practice his religion and 14th Amendment right to due process. *Id.* at ¶¶ 29-31. For his relief, plaintiff seeks, among other things, a court order directing the MDOC "to immediately reinstate [p]laintiff to participate in the Strict Vegetarian Diet Line in keeping with [p]laintiff's religious beliefs and practices." *Id.* at ¶ 33. Plaintiff also seeks a court order directing "the MDOC to keep [p]laintiff, as long as he is in their custody, within a reasonable distance to his home region of Wayne County so as not to present an appearance of retaliation for bringing forth this lawsuit." *Id.* at ¶ 34.

In his present motion, plaintiff asks the Court to order defendants to transfer plaintiff "to an MDOC facility in his home region of Wayne County or nearby . . . where he will be allowed to participate on the strict vegetarian diet line which coincides with his religious beliefs in exercise of his United States Constitution First Amendment Right." Plaintiff's Proposed Order

(docket no. 78-1). Plaintiff included a declaration in support of his motion which provided in pertinent part as follows. He is a practicing Buddhist and was approved for a strict vegetarian diet on February 4, 2011. Plaintiff's Decl. at ¶ 5 (docket no. 80). On August 2, 2012, plaintiff was unlawfully removed from the strict vegetarian diet line at ICF by defendant Snyder. *Id.* at ¶ 2. Plaintiff filed this lawsuit on February 8, 2013. *See* Compl. (docket no. 1). On August 14, 2013, more than six months after filing this lawsuit, plaintiff re-applied to be placed on the strict vegetarian line. Plaintiff's Decl. at ¶ 10. As of May 28, 2014, plaintiff was housed at MTU, which does not provide a strict vegetarian diet in accordance with plaintiff's religious beliefs. *Id.* at ¶ 12. Plaintiff states that he is suffering irreparable harm "in the form of continued spiritual, mental, and emotional suffering, at times being forced to consume from extreme hunger and lack of funds, food items that violate my religious beliefs" and wants a transfer to the Macomb Correctional Facility (MRF) "where the strict vegetarian diet is served to prisoners approved to eat from that religious menu." *Id.* at ¶¶ 14 and 16. Plaintiff states that he is entitled to have this Court reinstate him to the strict vegetarian diet line and transfer him to a facility which serves such a diet "without giving the appearance of retaliation for having procured this order." *Id.* at ¶ 17. In addition, plaintiff states that the MDOC must transfer him to particular facilities, "[s]pecifically no transferring this Plaintiff to any Upper Peninsula facility, disciplinary, or any facility in which this Plaintiff can not be housed, which could potentially lead to Plaintiff being transferred to the former." *Id.*

      **II.**     **Plaintiff's request for injunctive relief**

      **A.**     **Legal standard**

While plaintiff refers to this motion as one for a temporary restraining order, the relief he seeks is for a preliminary injunction pursuant to Fed. R. Civ. P. 65(a). "The purpose of a

preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). *See, e.g.*, *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976) ("[t]he general function of a preliminary injunction is to maintain the status quo pending determination of an action on its merits"). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Cheker Oil Company*, 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). Here, it appears that plaintiff seeks the issuance of a mandatory injunction to alter the status quo and grant him the ultimate relief he seeks, i.e., reinstatement on the strict vegetarian food line and transfer to an MDOC facility located in Michigan's Lower Peninsula near Wayne County.

A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *Fort Wayne Women's Health Organization v. Brane*, 734 F.Supp. 849, 850 (N.D. Ind. 1990). Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). Correctional officials are professional experts in matters of security

and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548.

      **B.    Plaintiff's requested transfer to a different correctional facility**

Plaintiff's request for a transfer is based in part, on the speculative ground that someone might retaliate against him for filing this action. Plaintiff's request regarding a transfer is without merit, because he seeks injunctive relief based upon possible retaliation that may occur at some point in the future. Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts*, 282 U.S. 660, 674 (1931). Accordingly, plaintiff's request for a transfer should be denied on this ground.

      **C.    Reinstatement for strict vegetarian diet**

In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998). The four factors listed above are meant to be balanced as they guide the court in exercising its discretion; they are not due rigid application and need not be assigned equal weight. *In re Eagle-Pitcher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). The court's discretion is directed at the weight to be given each factor, and the effect to be accorded their mix. While a court

need not consider any single factor as either indispensable or dispositive, neither is it required to conclude that all four support its decision. "Although the four factors must be balanced, the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction." *Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002), citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982) ("[s]everal of the circuits which have recognized the 'balance of hardships' test have now made it clear that the plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue"). *See also, Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction"). In addition, it is well established that "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Board of Medical Examiners,* 225 F.3d 620, 625 (6th Cir. 2000). Finally, the movant bears the burden of persuading the court that the factors weigh in favor of granting a preliminary injunction. *Granny Goose Foods, Inc. v Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 432, 441 (1974).

       **1.**     **Likelihood of success on the merits**

Plaintiff has not established a substantial likelihood of success on the merits. In denying plaintiff's motion for summary judgment, the Court explained that the record reflects a dispute of fact as to the central issue of this litigation:

> Plaintiff argues that he was not provided with a hearing before he was removed from the religious meal plan, and that no reasonable juror could find otherwise.
>
>            \*      \*      \*
>
> However, in conjunction with a previous motion for summary judgment, Snyder provided an affidavit stating that she conducted an administrative hearing on August 2, 2012, and that Plaintiff was present at the hearing. (Dkt. #23-6 at Page ID #156.)

> Thus, there is a dispute of fact as to whether the hearing occurred and whether Plaintiff was present. This issue is central to Plaintiff's claims, and thus the dispute precludes summary judgement [sic].

Order at p. 5 (docket no. 91) (internal footnote omitted). Given this sparse record, which reflects that a genuine issue of fact exists with respect to the central issue in plaintiff's claim, the Court concludes that this factor is neutral.

### 2. Irreparable Injury

The "key word" in determining the extent of an injury sufficient to support the award of injunctive relief is "irreparable." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Mere injuries, however substantial, are not enough. *Id.* Rather, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.* "In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.* (internal citations omitted). Here, the Court concludes that plaintiff is not suffering from irreparable harm. A prisoner's demand to be placed on a religious diet does not present the type "immediate and irreparable injury, loss, or damage" that merits injunctive relief. In denying plaintiff's previous motion for a TRO, the Court found that "[p]laintiff does not object to the magistrate judge's conclusion -- with which this Court concurs -- that [p]laintiff has not established irreparable harm." Order (docket no. 31) *See also, Schuh v. Michigan Department of Corrections*, No. 1:09-cv-982, 2010 WL 3648876 at \*2 (Report and Recommendation) (July 26, 2010), adopted 2010 WL 3655654 (Sept. 16, 2010) (W.D. Mich.) (plaintiff prisoner's desire to be placed on a

Kosher diet does not involve the type of immediate and irreparable injury, loss, or damage that merits issuance of a TRO). Accordingly, this factor favors defendants.[2]

### 3. Substantial harm to others

There is no evidence before the Court that the requested injunctive relief will, or will not, cause substantial harm to others. Accordingly, this factor is neutral.

### 4. Public interest

Plaintiff does not seek a court order to maintain the status quo. Rather, plaintiff seeks to have this court grant him the ultimate relief sought in this lawsuit, which includes re-instating a religious diet which the MDOC rescinded and transferring plaintiff to certain correctional facilities in the Lower Peninsula. Plaintiff's requested injunctive relief would require this court to intervene in the MDOC's day-to-day operation of its correctional facilities, involving both religious programming and the management of the prison population. "Because the realities of running a penal institution are complex and difficult," the Supreme Court has "recognized the wide-ranging deference to be accorded the decisions of prison administrators." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977). Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. Such matters are best left to the state's prison officials.

> [J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is

---

[2] In response to plaintiff's motion, defendants state that "Plaintiff cannot credibly argue that he has suffered certain and great injury if Plaintiff himself has refused to stop his willing purchase and consumption of these items [which violate his strict vegetarian diet]." Defendants' Response at p. 6. In support of this statement, defendants have included lists of items purchased by plaintiff. *See* Exhibit A (docket no. 82-1). However, the Court has not considered this evidence, because defendants do not designate which items on the lists violated plaintiff's strict vegetarian diet.

8

>   peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.

*Bell v. Wolfish*, 441 U.S. 520, 548 (1979).

The issuance of a preliminary injunction in this case would unnecessarily intrude into the day-to-day operation of the MDOC and disrupt that agency's ability to manage prisoners. The record does not suggest that the MDOC's operation of correctional facilities under the status quo poses such a threat to plaintiff that this court must intervene during the pendency of this lawsuit and exercise its judgment in place of the professional judgment of the MDOC's employees. Accordingly, this factor favors defendants.

### 5. Evaluation of the four factors

After reviewing the four factors relevant to issuing injunctive relief, the Court draws the following conclusions. The first factor, likelihood of success on the merits, favors neither party. As discussed, there is a dispute of fact as to whether the hearing occurred and whether plaintiff was present at the hearing. The record is too sparse for the Court to determine the relative merits of the parties' positions. The second factor favors defendants, because plaintiff has not demonstrated that he will suffer irreparable harm. The third factor is neutral, substantial harm to others, favors neither party. Finally, the fourth factor favors defendants because there exists a strong public interest in having the MDOC, rather than this Court, operate religious programming in the state penal institutions and manage the state prison population. For these reasons, the court concludes that plaintiff's motion for a preliminary injunction should be denied.

**IV.	Recommendation**

For these reasons, I respectfully recommend that plaintiff's motion for injunctive relief (docket no. 78) be **DENIED**.


Dated:  November 6, 2014				/s/ Hugh W. Brenneman, Jr.
						HUGH W. BRENNEMAN, JR.
						United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).